IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION NO. 08cr369 |
| vs. | : | |
| DARRYL BUCK | : | CIVIL ACTION NUMBER 11cv7569 |

MEMORANDUM

YOHN, J.                                                                                                                    MAY 8, 2012

Defendant, Darryl Buck ("Buck") has filed a pro se motion to vacate, set aside or correct his sentence under 28 U.S.C. § 2255. The government has filed a motion to dismiss to which Buck has filed a response. As more thoroughly explained below, Buck's guilty plea agreement contained an appellate waiver provision. Because he entered into the guilty plea agreement knowingly and voluntarily, he has waived his right to bring the claims in this motion. Moreover, there are no sufficient allegations of a miscarriage of justice to override the waiver. As a result, the government's motion will be granted.

I.      **Facts and Procedural History**

On June 24, 2008, a grand jury returned a one-count indictment charging Buck with possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) ("§ 922(g)(1)"). On October 21, 2008, the grand jury returned a superseding indictment charging Buck with possession of a firearm by a convicted felon and as an armed career criminal in violation § 922(g)(1) and 18 U.S.C. § 924(e) ("§ 924(e)"), respectively.

On March 25, 2009, Buck pled guilty to the violation of § 922(g)(1). Under the plea agreement, *inter alia*: (1) the government agreed not to advocate a sentence in excess of the statutory mandatory minium; and (2) Buck, with limited exceptions, waived his right to appeal directly to the Third Circuit and to collaterally attack his conviction or sentence (such as through a § 2255 habeas

corpus motion). During the October 15, 2009, sentencing hearing, I also found Buck guilty of § 924(e) based on his prior convictions. As a result, I sentenced Buck to 180 months of imprisonment, which was the mandatory minimum sentence.

The waiver in the guilty plea agreement contained an exception which authorized a direct appeal concerning the court's determination with reference to whether Buck had three prior convictions for a violent felony or a serious drug offense for purposes of 18 U.S.C. § 924(e) and the Armed Career Criminal sentencing guideline. Buck exercised his right of appeal on this issue. The Third Circuit affirmed on July 18, 2011.

Buck filed his § 2255 habeas corpus motion on December 9, 2011. The government filed its motion to dismiss on January 19, 2012, to which Buck filed a response on February 6, 2012.

## II.  Standard

Criminal defendants may waive both constitutional and statutory rights, including the right to appeal, "provided they do so voluntarily and with knowledge of the nature and consequences of the waiver" and the enforcement of the waiver "does not work a miscarriage of justice." U.S. v. Mabry, 536 F.3d 231, 236-38 (3d Cir. 2008). The defendant has the burden of establishing that his waiver was unknowing or involuntary, while the court has the "duty both to examine the knowing and voluntary nature of the waiver and to assure itself that its enforcement works no miscarriage of justice, based on the record evidence before it." Id. at 237-38 (citing U.S. v. Khattak, 273 F.3d 557, 563 (3d Cir. 2001)). As part of its duty, the district court must inform the defendant of, and determine that the defendant understands, the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence as required by Federal Rule of Criminal Procedure 11(b)(1)(N). Id. at 239.

In examining whether a miscarriage of justice would occur if the waiver were enforced,

there is no specific list of circumstances which give rise to a miscarriage of justice. Id. at 242. Instead, the court must adopt a common sense approach, investigating, *inter alia*, "the clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result", before invalidating a waiver due to a "miscarriage of justice." Id. at 242-43 (quoting U.S. v. Teeter, 257 F.3d 14, 25-26 (1st Cir. 2001)). Granting an exception to a waiver because of a miscarriage of justice must be done sparingly and only where manifest injustice would otherwise result. U.S. v. Wilson, 429 F.3d 455, 458 (3d Cir. 2005) (citing Teeter, 257 F.3d at 26).

The waiver does not bar the assertion of constitutional claims that the relevant case law holds cannot be waived. Buck does not identify any such claim. Moreover, the right to mount a collateral attack pursuant to § 2255 survives a waiver only with respect to those discrete claims which relate directly to the negotiation of the waiver. Again, Buck makes no such claim here.

**III.   Discussion**

   A.   Claims One, Two and Four are Patently Frivolous

Bucks raises four claims in his motion. Claims One, Two and Four are patently frivolous and can be disposed of with minimal explanation.

In Claim One Buck alleges a Fifth Amendment due process violation due to pre-indictment delay. He charges the federal government intentionally delayed and adopted his case for federal prosecution for the sole purpose of giving him a more severe sentence. Buck notes that his state arrest occurred on April 12, 2008 and that the federal indictment was filed on June 24, 2008, barely two months later. Such a short delay has never been found even close to being a due process violation. State law and federal law both make it a crime for a convicted felon to possess a firearm.

3

At a minimum, either may prosecute and Buck cites no authority to the contrary.

In Buck's second claim he alleges that the Fifth Amendment due process violation was compounded by the manipulation of the "Dual Sovereignty Doctrine." He alleges a violation of the "principles of Federalism" by federalizing the gun possession charge. He does not flesh out this argument or present any authority in support of it; however, he seems to be arguing that because he was arrested in state court he has a right to remain there and that the federal government improperly adopted the case for prosecution under a federal statute. Again, the claim is frivolous.

Buck's fourth claim alleges a Sixth Amendment violation for ineffective assistance of counsel based on a claim that one of his prior convictions did not meet the maximum term of imprisonment of ten years and, therefore, was not a predicate offense under § 924(e). The ineffectiveness claim has no merit since the guilty plea agreement did, in fact, preserve defendant's right to file a direct appeal if the court determined that he had three prior convictions that qualified as a violent felony or a serious drug offense under the Act. Moreover, after this court found that he had three prior convictions that qualified under the Act, Buck did file a direct appeal to the Third Circuit. The Third Circuit rejected his appeal. The issue cannot be re-litigated in a § 2255 motion.

B. Buck's Third Claim is a Fourth Amendment and Due Process Violation in that his Guilty Plea was not Knowingly and Intelligently Made and was a Miscarriage of Justice

i. The Waiver was Knowing and Voluntary

After reviewing the transcript of the guilty plea hearing and the parties' briefs, I conclude that Buck's waiver of his appellate rights in exchange for certain promises from the prosecution was knowing and voluntary. As required by Mabry, the transcript of the plea hearing shows that I explained the terms of the plea agreement to Buck and questioned him to confirm that he understood the meaning of the provisions. 536 F.3d at 239.

The record establishes that, regarding the plea in general, I explained the rights that Buck was giving up by signing the agreement and Buck testified that he could read, write and understand the English language, had completed a GED education, was not medicated or intoxicated and had no mental illness which affected his judgment. He also testified that had enough time to discuss the case with his attorney, was satisfied with his attorney's services, understood the charges against him, understood the rights he was giving up by signing the plea agreement, and was not coerced into signing the agreement. (March 25, 2009, Plea Agreement Hearing, Doc. 84, Exh. A, pp. 4-10, 20-21). After I explained to him that the decision to enter a guilty plea was his and his alone and that his attorney could only give him the benefit of his advice and recommendation, Buck acknowledged that he understood this and that he himself did, in fact, desire to plead guilty. Regarding the waiver of appellate rights specifically, I explained that in exchange for various benefits, Buck was giving up his right to, *inter alia*, file a § 2255 habeas corpus motion. (Id. at 15-16). Buck testified that he understood and accepted that arrangement, and expressly waived his right to file a collateral attack such as a § 2255 motion. (Id. at 17). After again asking Buck whether he had any questions about the guilty plea or whether there was anything that occurred during the hearing that he did not understand, and after he testified that he had no questions and understood everything that had happened, I found that Buck's guilty plea was voluntary and knowing. (Id. at 31-32).

Buck raises several arguments in an attempt to rebut this record and my finding, but all may be quickly rejected. First, Buck contends that the transcript shows that his counsel did not understand the waiver and, therefore, he could not have understood the waiver. This argument is based on a question asked by his counsel regarding whether Buck was waiving a potential claim that counsel was ineffective during the sentencing, which had not yet occurred. (Id. at 17). The fact that his counsel asked a question and a discussion took place in Buck's presence regarding the appellate waiver

5

does not indicate that counsel did not understand the waiver. Instead, the discussion should have helped Buck better understand the rights he was relinquishing. I therefore reject this contention.

Next Buck asserts that he did not fully understand the appellate waiver because I allegedly stated that a direct appeal was the same as a collateral attack and that I said the appellate waiver barred all collateral attacks. Buck's argument is meritless. First, I stated only that a collateral attack, habeas corpus motion, motion to vacate, set aside or correct a sentence, and a motion under § 2255 were the same, not that a direct appeal was the same as a collateral attack. (Id. at 16). Second, I correctly stated that, according to the terms of the guilty plea agreement, all collateral attacks were prohibited.[1] See (March 25, 2009, Plea Agreement, Doc. 45, ¶ 7). I also stated that whether the waiver would be upheld by either this court or the Third Circuit would be determined later, if tested. (Doc. 84, Exh. A, p. 18). These statements are accurate and did not cause Buck to unknowingly enter into the plea agreement or the appellate waiver. The fact that courts have carved out certain exceptions to the enforcement of appellate waivers does not change the actual wording of this waiver prohibiting collateral attacks.

Finally, Buck contends that his waiver was not knowing because he was not told the elements of the § 924(e) claim in the superseding indictment. As I explained during the plea agreement hearing, Buck only plead guilty to the § 922(g)(1) violation, the elements of which were conveyed to him. (Id. at 19, 21-22). As I further stated, I would determine at the sentencing hearing whether Buck had also violated § 924(e) and was an armed career criminal. (Id. at 19). Since Buck only plead guilty to § 922(g)(1) and he does not dispute that he understood the elements of that crime,

---

[1] Paragraph 7 of the plea agreement does state that the waiver is not intended to bar any constitutional claims which relevant case law holds cannot be waived. Buck points to no such constitutional claims here.

his argument must fail. Moreover, as discussed above and more fully below, Buck unsuccessfully directly appealed to the Third Circuit my determination at sentencing that he was an armed career criminal under § 924(e); thus, an argument attacking that holding by the Third Circuit is not proper in his § 2255 motion. U.S. v. DeRewal, 10 F.3d 100, 105 n.4 (3d Cir. 1993) (holding that § 2255 may not be used to re-litigate issues raised and answered on direct appeal).

As a result, I hold that Buck knowingly and voluntarily waived, *inter alia*, his right to collaterally attack his conviction and sentencing.

ii.  Enforcement of the Waiver Will Not Result in a Miscarriage of Justice

Because I have concluded that Buck knowingly and voluntarily entered into the plea agreement and the appellate waiver clause, the waiver will be enforced unless its enforcement would create a miscarriage of justice. Mabry, 536 F.3d at 237-38. No such extraordinary circumstances exist in this case that would justify setting aside the waiver. There has been no error in the plea or the sentencing, much less one that was clear and of significant gravity and impact upon Buck. Id. at 242-43.

Buck contends that the appellate waiver should be set aside because his counsel provided ineffective assistance while advising him about his plea of guilty to the § 922(g)(1) count and the appellate waiver. He is correct that, if his counsel provided ineffective assistance in connection with the plea agreement and appellate waiver, it would be a ground to override the waiver. U.S. v. Shedrick, 493 F.3d 292, 298 (3d Cir. 2007) (holding that "[e]nforcing a collateral-attack waiver where constitutionally deficient lawyering prevented [the defendant] from understanding his plea . . . would result in a miscarriage of justice); U.S. v. Akbar, 181 Fed. Appx. 283, 286 (3d Cir. 2006) (concluding that "it is possible for there to be a miscarriage of justice when plea proceedings were tainted by ineffective assistance of counsel") (internal quotation marks omitted). Specifically, Buck alleges that

7

the assistance of his counsel was ineffective during the plea proceedings because counsel failed to inform him that he had an allegedly viable defense that the federal government violated the principles of federalism by removing his case (as well as all other similar cases) from state court and prosecuting him under § 922(g)(1), thus ignoring the state's sovereignty.  Buck contends that had he known of this possible defense, he would not have plead guilty and given up his appellate rights, but instead would have gone to trial proffering this argument.

A court will only find an appellate waiver invalid due to ineffective assistance of counsel if the claim would be meritorious.  Akbar, 181 Fed. Appx. at 286-287.  In order to be meritorious, a petitioner seeking habeas relief on ineffective assistance grounds must first establish that "'counsel's performance was deficient'" and that he or she "'made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'" U.S. v. Dawson, 857 F.2d 923, 927 (3d Cir. 1988) (quoting Strickland v. Washington, 466 U.S. 668, 687 (1984)).  Here, counsel's assistance could not be found ineffective for failing to raise a meritless claim that adoption of a state case by the federal government to prosecute a defendant for a violation § 922(g)(1) violates general concepts of federalism.  The law is clearly established that the federal government may prosecute felons in possession of firearms cases and that such a prosecution is not a misuse of the Commerce Clause or an abuse of federal power.  U.S. v. Harris,  398 Fed. Appx. 803, 805, (3d Cir. 2010) (affirming the holding in Scarborough v. U.S., 431 U.S. 563 (1977) that in order "to establish a nexus with interstate commerce [under § 922(g)(1)], the Government need prove only that the firearm possessed by the convicted felon traveled at some time in interstate commerce" (internal quotation marks omitted)).  Therefore, I will not hold the appellate waiver invalid under this theory.

Buck also claims that his counsel provided ineffective assistance by failing to move to dismiss the superseding indictment because he did not fit the definition of an armed career criminal

8

under § 924(e).² Unlike Buck's previous argument, however, he has not and cannot attempt to couch this claim in terms of his counsel's ineffectiveness in advising him regarding his plea of guilty to the § 922(g)(1) claim and the appellate waiver. As a result, his argument is waived. See U.S. v. White, 307 F.3d 336, 343 (5th Cir. 2002) (holding that "an ineffective assistance of counsel argument survives a waiver of appeal only when the claimed assistance directly affected the validity of that waiver or the plea itself"). Moreover, since this issue was rejected by the Third Circuit in this case, again Buck would be unable to establish that his counsel made a serious error which rendered his performance deficient. Dawson, 857 F.2d at 927.

### IV.  Conclusion

Because Buck's waiver of his appellate rights was made knowingly and voluntarily and the enforcement of the waiver will not cause a miscarriage of justice, the government's motion to dismiss Buck's § 2255 habeas corpus petition will be granted and Buck's motion to vacate, set aside or correct sentence under § 2255 will be dismissed.

An appropriate order follows.

---

² Buck contends that I erred when I found that, for purposes of meeting § 924(e), he had three previous convictions for violent felonies or serious drug offenses punishable by imprisonment for terms exceeding one year. Buck claims that one of his felony convictions did not meet the requirements of § 924(e). As stated earlier, Buck directly appealed this decision unsuccessfully.